## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| CUNEYT SARIKAYA AND ROSE SARIKAYA | ) ) ) | |
| Plaintiffs, | ) ) | **Case No.** |
| v. | ) ) ) | **Judge** |
| OCWEN LOAN SERVICING, LLC | ) ) | **COMPLAINT** |
| Defendant. | ) ) ) | **With Jury Demand Endorsed** |

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Cuneyt Sarikaya and Rose Sarikaya (collectively "the Sarikayas" or "Plaintiffs"), by and through the undersigned counsel, and for their Complaint against the defendant, Ocwen Loan Servicing, LLC ("Ocwen" or "Defendant") and state as follows:

## I.
## INTRODUCTION

1.      This is an action for actual and statutory damages brought by Plaintiffs against Defendant for its willful, knowing, and/or negligent violation of Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 *et seq.*, known as the *Fair Credit Reporting Act* ("FCRA"), which relates to the proper dissemination and use of consumer credit and other financial information, for its violations of the bankruptcy discharge of 11 U.S.C. §542 et. seq. and for its violation of the Texas Debt Collection Act, Tex. Fin. Code § 392.001 *et. seq.*

## II.
## PARTIES

2.      Plaintiffs are over the age of twenty-one (21) and presently reside in Frisco,

1

Collin County, Texas.

3.     Plaintiffs are "consumers" as defined by Tex. Finance Code § 392.001(1).

4.     Defendant is a foreign limited liability company that is engaged in the business of consumer finance in the Eastern District of Texas, the State of Texas, and in other States in the United States and may be served by delivering a summons to its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin 78701-3218.

5.     Defendant is a "person" and a "user" of consumer credit and other financial information, as said terms are defined and contemplated, respectively, under the FCRA.

6.     Defendant is a furnisher of consumer credit information to Experian Information Systems, Inc. ("Experian"), one of the three (3) national consumer reporting agencies.

7.     Defendant is a "debt collector" as defined by Tex. Fin. Code § 392.001(6).

### III.
### JURISDICTION AND VENUE

8.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §1681*p*. This Court has jurisdiction to consider the claims in this Complaint for Civil Contempt and Damages pursuant to 28 U.S.C. § 1331, 1334 and 1337(a), 28 U.S.C. §§2201-2202. The Court has the authority to enter a final order regarding the contested matter because it constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b) (2)(A), (E), (G), (I), (J) and (O).

9.     Venue in this District is proper because Defendant transacts business in this District and Plaintiffs filed bankruptcy in this District.

### IV.
### FACTUAL ALLEGATIONS

### Background

10.     Plaintiff Cuneyt Sarikaya filed bankruptcy in the United States Bankruptcy Court

for the Eastern District of Texas, Sherman Division, Case No. 09-40699 on or around March 6, 2009.  Plaintiff Rose Sarikaya filed bankruptcy in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, Case No. 08-42334 on or around August 30, 2008.

11.     Prior to Plaintiffs filing their bankruptcy cases, Defendant asserted pre-petition claims against them in an attempt to collect a consumer debt allegedly owed by them.  The debts required Plaintiffs to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof and the same were primarily for personal, family, or household purposes.  The claims were listed on Schedule "F" of Plaintiffs' bankruptcy petitions as unsecured claims, as the subject property that once secured the underlying mortgage accounts had been foreclosed on December 5, 2006 and surrendered at that time to Defendant.  Copies of these bankruptcy petition schedules are attached hereto as Exhibits 1 and 2.

12.     On or around December 9, 2008 and June 10, 2009, the Bankruptcy Court issued orders granting each of the Plaintiffs a discharge.  Copies of those discharge orders are attached hereto as Exhibits 3 and 4.

13.     The Discharge Orders terminated any rights Defendant had against Plaintiffs with respect to the underlying debts.

14.     The Discharge Orders were mailed by the clerk of the Bankruptcy Court to all creditors and other parties listed on the mailing matrix previously filed with the Bankruptcy Court, including Defendant.  The Discharge Orders mailed to Defendant were not returned.

15.     Defendant received notice of the discharges.

16.     At no time has Defendant objected to or disputed the details of the claims in the March 6, 2009 and August 30, 2008 schedules.

17.     At no time during the Chapter 7 cases did Plaintiffs reaffirm the debt with Defendant.

3

18.    At no time during the Chapter 7 cases were Defendant's pre-petition claims asserted against Plaintiffs declared to be non-dischargeable.

### Defendant's Post-Discharge Collection Activity

19.    Subsequent to the August 30, 2008 and June 10, 2009 discharges, Defendant continued its efforts to attempt to collect upon the underlying debts against Plaintiffs personally.

20.    Plaintiffs were forced to assert claims against Defendant for violations of the Discharge Orders stemming from such unlawful conduct.

21.    On or about November 15, 2010, the parties settled those claims and entered into a Settlement, Release and Confidentiality Agreement ("Settlement Agreement").

22.    Subsequent to the execution of the Settlement Agreement, and in further violation of the discharge injunction, Defendant continued its efforts to collect money from Plaintiffs on the underlying discharged debts by sending Plaintiffs statements on the account at issue that had been discharged for over three (3) years.

23.    Specifically, for six months, beginning on or about May 17, 2011 and ending October 17, 2011, Defendant sent monthly mortgage account statements, complete with payment coupons and return envelopes, as if the subject account was still active, demanding from Plaintiffs payment of $22,365.00 in the first statement and $24,135.30 in the last.  Copies of these six statements are attached hereto as Exhibits 5 through 9.

### Defendant's Impermissible Credit Pulls

24.    After the parties signed the Settlement Agreement, Defendant began requesting access to and receiving copies of Plaintiffs' consumer reports maintained by Experian.  A redacted copy of Plaintiff Cuneyt Sarikaya's January 28, 2013 Experian consumer report showing these impermissible credit report pulls is attached hereto as Exhibit 10.  A redacted copy of Rose Sarikaya's January 28, 2013 Experian consumer report showing these

4

impermissible credit report pulls is attached hereto as Exhibit 11.

25.    Between November 15, 2010 and January 28, 2013, Defendant requested and obtained Plaintiffs' consumer reports' information from Experian on at least *twelve (12) occasions*.

26.    Defendant's alleged purpose for requesting and obtaining Plaintiffs' consumer report information was for "account monitoring" or "other permissible purpose."  However, Plaintiffs no longer had accounts with Defendant, nor had they initiated any business transaction(s) with Defendant at any time between November 15, 2010 and January 28, 2013.

27.    Plaintiffs' January 28, 2013 Experian consumer reports show that the underlying Ocwen mortgage account at issue was closed, no balance owing, and a remark of "Included in Bankruptcy Chapter 7 on June 10, 2009." *See* Exhibit 10 and Exhibit 11.

28.    Defendant's multiple accesses of Plaintiffs' consumer reports occurred more than three (3) years *after* Plaintiffs' bankruptcy discharges and on the heels of the Settlement Agreement resolving a dispute between the parties for Defendant's continued efforts to collect on the same discharged debt at issue here, after Defendant knew the debt had been discharged in Plaintiffs' bankruptcy cases.

29.    Plaintiffs justifiably fear and believe that Defendant will continue to access their private personal and financial information absent this Court's intervention.

30.    Plaintiffs justifiably fear and believe that Defendant will continue to pursue Plaintiffs in legal (and perhaps non-legal) ways in connection with the discharged debt absent this Court's intervention.

31.    After a reasonable time to conduct discovery, Plaintiffs believe they can prove that Defendant has received dozens, if not hundreds, of disputes from consumers like Plaintiffs,

complaining that Defendant illegally obtained their credit reports and credit information.

32.     After a reasonable time to conduct discovery, Plaintiffs believe they can prove that despite such disputes, Defendant intentionally, knowingly and recklessly has not corrected its policy of impermissibly accessing and reviewing consumer reports.

33.     After a reasonable time to conduct discovery, Plaintiffs believe they can prove that all actions taken by employees, agents, servants, or representatives of any type for defendant were taken in the line and scope of such individuals' (or entities') employment, agency, or representation.

34.     After a reasonable time to conduct discovery, Plaintiffs believe they can prove that all actions taken by Defendant were willful with either the desire to harm Plaintiffs and/or with the knowledge that its actions would very likely harm Plaintiffs and/or that its actions were taken in violation of the law.

35.     After a reasonable time to conduct discovery, Plaintiffs believe they can prove that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior with respect to illegally access of consumer reports post-bankruptcy discharge.

## V.
## DAMAGES

36. The conduct of Defendant at issue has been the producing and proximate cause of past and future mental distress and emotional anguish from the ongoing invasion of Plaintiffs' privacy and other damages that will be presented to the jury.

37.     Due to Defendant's conduct, Plaintiffs were forced to hire counsel and their damages include reasonable attorneys' fees incurred in pre-suit representation and in prosecuting this claim.

38.     Due to Defendant's conduct, Plaintiffs are entitled to punitive damages, statutory

damages, and all other appropriate measures to punish and deter similar future conduct by Defendant and similar companies.

## VI.
## GROUNDS FOR RELIEF

### GROUNDS FOR RELIEF - COUNT I
### TEXAS FINANCE CODE

39.     Plaintiffs repeat, re-allege, and assert the facts and allegations stated in all previous paragraphs, which are incorporated herein by reference.

40.     Defendant's violations of the Texas Finance Code include, but are not limited to the following:

41.     Tex. Fin. Code §392.301(a)(8) which prohibits Defendant from taking an action prohibited by law, since the discharge injunction prohibited Defendant from attempting to contact Plaintiffs to collect the discharged debt, sending out the mortgage statements with payment coupons and pulling their credit reports in an effort to collect the discharged debt violated this provision (*see* attached Exhibits 5-11);

42.     Tex. Fin. Code § 392.304(a)(8), which prohibits Defendant from misrepresenting the character, extent, or amount of Plaintiffs' debt, or misrepresenting the status of Plaintiffs' debt in a judicial or governmental proceeding, because mailing out account statements to the Plaintiffs over three years after the debt had been discharged was a misrepresentation of the character, extent, and amount of the discharged debt at issue and a violation of this provision (*see* Exhibits 5-11). Further, in order to pull plaintiffs' credit reports it had to again misrepresent the character of the debt to the credit bureau as being collectible when it was not and that they had a lawful purpose for obtaining a copy of the reports, when it did not; and

43.     Tex. Fin. Code §392.304(a)(19), which prohibits Defendant's use of false representations or deceptive means to collect a debt, since mailing Plaintiffs mortgage account

statements on a non-existent account in an effort to collect a discharged debt was a false and deceptive means to collect a debt. (*see* Exhibits 5-11) Further, pulling credit reports to monitor or aid in the collection of a discharged debt also would be a violation of this provision.

44.     Under Tex. Fin. Code Ann. §392.403, the said violations render Defendant liable to Plaintiffs for actual damages, statutory damages, for injunctive relief, costs, and reasonable attorney's fees.

<div align="center">

**GROUNDS FOR RELIEF - COUNT II**
**FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 *et. seq.***
</div>

45.     Plaintiffs repeat, re-allege, and incorporate by reference all paragraphs above as if set forth herein in their entirety.

46.     The FCRA establishes very specific rules limiting when and why an entity can obtain a consumer report:

(f) Certain use or obtaining of information prohibited. -- A person shall not use or obtain a consumer report for any purpose unless --

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

See 15 U.S.C. § 1681b(f).

1. Section 1681b(a)(3) lists the all-inclusive purposes for which a consumer report can be obtained:

(a) In General. -- * * * [A] consumer reporting agency may furnish a consumer report under the following circumstances and no other:

***

(3)  To a person which it has reason to believe –

(A)  intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;

***

(F)  otherwise has a legitimate business need for the information * * *

(ii)  to review an account to determine whether the consumer continues to meet the terms of the account. See 15 U.S.C. § 1681b (a)(3).

47.     On at least twelve (12) occasions since November 15, 2010, Defendant requested and obtained Plaintiffs' consumer reports from Experian.

48.     Upon information and belief, on each such occasion, Defendant represented to Experian that such requests were made for "account monitoring" or other "permissible" purposes.

49.     When requesting and obtaining Plaintiffs' credit information from Experian, as described herein, Defendant had actual knowledge that it did not have a permissible purpose to obtain such information.

50.     Defendant has actual knowledge that as of Plaintiffs' bankruptcy discharges in December 2008 and June 2009, the discharged mortgage account at issue was closed and Defendant was legally prohibited from pursuing any collections on the account against Plaintiffs or even communicating with Plaintiffs about the account to justify an account review of their credit information.  As such, Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiffs' credit information at all relevant times.

51.     Defendant has actual knowledge that Plaintiffs did not request credit from or otherwise initiate a credit transaction with Defendant at any time between November 15, 2010

and January 28, 2013.  As such, Defendant had actual knowledge that it did not have a legally permissible purpose to access Plaintiffs' credit information.

52.     For Defendant to repeatedly request and obtain Plaintiffs' private personal and financial information, in the face of actual knowledge that it had no permissible purpose to do so, constitutes knowing and willful violations of the FCRA.

53.     After a reasonable time to conduct discovery, Plaintiffs believe they can prove, additionally and/or in the alternative, that Defendant is unwilling or unable to prevent its internal system(s) from requesting and obtaining Plaintiffs' consumer report without a permissible purpose, thereby subjecting Plaintiffs to having their private, personal and financial information disclosed without their consent, authorization or other legal justification.

54.     Plaintiffs are dumbfounded and disgusted that despite their best efforts, by and through counsel, to stop Defendant from invading their privacy, Defendant continues to blatantly disregard their rights.

55.     As a direct and proximate result of Defendant's conduct, as outlined above, Plaintiffs have suffered and will continue to suffer substantial injury, including, but not limited to, mental anguish and emotional distress from the ongoing invasion of their privacy, entitling Plaintiffs to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681$o$.

56.     Defendant's conduct reveals a conscious and reckless disregard of Plaintiffs' rights.  The injuries suffered by Plaintiffs are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiffs to statutory damages in the amount of up to $1,000.00 per violation pursuant 15 U.S.C. § 1681$n$(a)(2).

57.     Defendant's conduct reveals a conscious and reckless disregard of Plaintiffs' rights.  The injuries suffered by Plaintiffs are attended by circumstances of fraud, malice, and

willful and wanton misconduct, entitling Plaintiffs to punitive damages pursuant 15 U.S.C. § 1681$n$(a)(2).

<div align="center">

**GROUNDS FOR RELIEF - COUNT III**
**VIOLATION OF THE BANKRUPTCY DISCHARGE INJUNCTION**

</div>

58. Plaintiffs repeat, re-allege, and incorporate herein all previous paragraphs above as if set forth herein in their entirety.

59. At all times material to this proceeding, Defendant had actual knowledge of Plaintiffs' Bankruptcy Case and the discharge of the debt at issue in said case.

60. Defendant failed to cease its debt collection activity on the account and debt at issue when it became aware that Plaintiffs filed for bankruptcy protection and the debt had been discharged in their Bankruptcy Case, as evidenced by Defendant sending Plaintiffs mortgage statements when no such mortgage existed and repeatedly accessing their credit reports from the CRAs without a lawful purpose.

61. Defendant's aforesaid actions were willful acts and constitute efforts to collect discharged debt from Plaintiffs in violation the discharge injunction of 11 U.S.C. §524(a). Defendant's failure to comply with the aforesaid laws, in light of repeated notices from the bankruptcy court about Plaintiffs' bankruptcy case, the discharge of Plaintiffs' debt at issue and the legal effect of the discharge; and its illegal access to plaintiff's consumer reports illustrates its contempt for federal law and the discharge injunction.

62. The actions of Defendant in repeatedly accessing Plaintiffs' credit reports from the CRAs and sending out mortgage statements when no mortgage existed on the account, constitute a gross violation of the discharge injunction as set forth in 11 U.S.C. §524(a)(1)-(3).

63. The facts and background stated above demonstrate that Defendant willfully violated the

orders and injunctions of the Bankruptcy Court as they concern the chapter 7 bankruptcy filed by Plaintiffs. With this prima facie showing, the duty is on Defendant to show, as the only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court that goes beyond a mere assertion of inability. Failing a showing of a present inability to comply with the orders and injunctions of the Bankruptcy Court by Defendant, Plaintiffs must prevail on their claims, and Defendant must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court with regard to the bankruptcy filed by Plaintiffs. Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant. Any allegation of a good faith exception should not be allowed.

64. Specifically, Defendant violated the part of the Bankruptcy Court's Discharge Order pertaining to 11 U.S.C. §524(a)(2) which "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived;…'"

65. No exceptions exist under 11 U.S.C. §524 or the other provisions of the United States Bankruptcy Code or other applicable law that permit the conduct of Defendant at issue with regard to the discharge injunction, as stated above.

66. The orders and injunctions of the Bankruptcy Court cannot be waived, except by the virtue of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint. None of the aforementioned has been approved by the Court here, and no waiver of the orders or injunctions of the Court has occurred in Plaintiffs' Bankruptcy Case as pertaining to the rights and remedies of Defendant.

67. Also, there is no requirement of mitigation on the part of Plaintiffs that is relevant to violations of the orders and injunctions of the Bankruptcy Court. Any attempt to burden Plaintiffs with policing the misconduct of Defendant would be a complete derogation of the law. It is well settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for shouldering the cost of compliance. Any such defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited. Any defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and action of Defendant. No allegation of a mitigation as a defense should be allowed.

68. Plaintiffs have been injured and damaged by Defendant's actions and are entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for violations of 11 U.S.C. §524, and pursuant to the Court's powers under 11 U.S.C. § 105.

WEREFORE, PREMISES CONSIDERED, Plaintiffs, Cuneyt Sarikaya and Rose Sarikaya, pray that the Court will:

A.     Enter judgment in favor of Plaintiffs against Ocwen for actual damages, costs, and reasonable attorneys' fees as provided by 15 U.S.C. § 1681*o;*

B.     Enter judgment in favor of Plaintiffs against Ocwen for statutory damages, punitive damages, costs, and reasonable attorneys' fees as provided by 15 U.S.C. § 1681*n;*

C.     Award Plaintiffs their actual damages under the Texas Finance Code;

D.     Find that appropriate circumstances exist for an award of statutory

13

damages and punitive damages to Plaintiffs, and award such damages to the fullest extent permitted consistent with the facts and evidence presented;

E.    Find that the Defendant violated the discharge injunction and award Plaintiff's actual damages, punitive damages, costs and attorney's fees;

F.    Award Plaintiffs pre-judgment interest as allowed by law; and

G.    Grant such other and further relief, in equity or in law, to which Plaintiffs might show themselves justly entitled.

Respectfully submitted,


/s/ James J. Manchee
James J. Manchee, Esq.
SBOT 00796988
Email: jim@mancheelawfirm.com
Marilyn S. Altamira, Esq,
SBOT 00796119
Manchee & Manchee, PC
12221 Merit Drive, Suite 950
Dallas, Texas 75251
Telephone: (972) 960-2240
Facsimile: (972) 233-0713

ATTORNEYS FOR PLAINTIFFS


**JURY DEMAND**

Plaintiffs hereby demands a trial to a jury on all issues so triable.

09-09-13                          /s/ James J. Manchee
Date                              James J. Manchee
                                 ATTORNEY FOR PLAINTIFFS

14